1

2

3

4

5              **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NEVADA**
6

7

8
OAKVIEW CONSTRUCTION, INC., an    )      2:10-cv-00984-ECR-RJJ
9 Iowa corporation,               )
                                  )
10      Plaintiff,                )
                                  )
11 vs.                            )      **Order**
                                  )
12 HUFFMAN BUILDERS WEST, LLC, a   )
Nevada limited liability company; )
13 VENTURE CORPORATION, a California )
corporation; DOES I through X;    )
14 ROE CORPORATIONS I through X,    )
                                  )
15      Defendants.               )
                                  )
16 _____ )

17

18       This case arises out of an alleged breach of a construction

19 services contract.  Plaintiff alleges five causes of action for: (i)

20 breach of contract against Huffman Builders West LLC; (ii) successor

21 liability against Venture Corporation; (iii) breach of implied

22 covenant of good faith and fair dealing against Huffman Builders

23 West LLC and Venture Corporation; (iv) unjust enrichment or, in the

24 alternative, quantum meruit, against all Defendants; and (v)

25 violation of Nevada Revised Statutes § 624.  Venture Corporation has

26 filed a motion (#21) for summary judgment.  The motion is ripe, and

27 we now rule on it.

28

# I. Factual Background

Oakview Construction, Inc ("Oakview") is an Iowa corporation and licensed Nevada contractor doing business in Clark County, Nevada.  (Compl. ¶ 1 (#1 Ex. A).)  Defendant Huffman Builders West LLC ("Huffman") is a Nevada limited liability company.  (Id. ¶ 2.) Huffman was the sole member of Hualapai Pavilion Commons LLC ("Hualapai").  (Id.)  Defendant Venture Corporation ("Venture") is a California corporation doing business in Clark County, Nevada.  (Id. ¶ 3.)  On or about January 25, 2006, Oakview entered into a written agreement with Hualapai to provide construction services for Hualapai on property located at Hualapai Pavilions, 10115, 10135, 10155, 10175 and 10196 West Twain Avenue, and 3820 South Hualapai Way, Las Vegas, Nevada (the "Project").  (Id. ¶ 5.)  On or about May 24, 2006, Oakview entered into another written agreement with Hualapai to provide additional construction services on the Project (all construction services provided by Oakview under the agreements hereinafter referred to as the "Work," and the agreements collectively referred to as the "Contracts").  (Id.)  Oakview asserts that during the course of Oakview's performance under the Contracts, Hualapai and Defendants issued change orders and work orders to Oakview that expanded Oakview's scope of work under the agreements and materially changed the Work, increasing Oakview's costs to perform the Work.  (Id. ¶ 6.)  Hualapai failed to pay the amounts due to Oakview under the Contracts.  (Id. ¶ 8.)  On November 20, 2006, Huffman agreed in writing to pay Oakview $498,155.58 of the amount due under the Contracts in consideration of Oakview's continued performance of the Contracts and in order to facilitate

2

1 Huffman's financing of the additional costs of the additional and

2 changed construction services outside of its construction loan for

3 the Project (the "Letter Agreement"). (Id. ¶ 9.) Pursuant to the

4 Letter Agreement, Oakview was entitled to payment at the time each

5 of the six buildings units of the Project was sold, on a pro rata

6 basis, based on the contract value of each unit. (Id.) In or about

7 March 2007, Oakview asserts that Venture purchased the assets and

8 certain liabilities of Huffman, including Huffman's liabilities

9 under the Letter Agreement. (Id. ¶ 10.) Nearly all of the units of

10 the Project have now been sold or leased by Defendants. (Id. ¶ 11.)

11 Between September 2007 and July 2008, after Venture's alleged

12 acquisition of Huffman, Oakview was paid $228,839.67 pursuant to the

13 terms and conditions of the Letter Agreement for the sale of certain

14 of the building units. (Id. ¶ 12.) Oakview asserts that it has

15 received none of the payments due in conjunction with the sale of

16 the remainder of the units. (Id. ¶ 12.) As of February 5, 2010,

17 the principal amount owing under the Letter Agreement was

18 $269,315.91 (the "Outstanding Balance"). (Id. ¶ 13.)

19

20                    **II. Procedural Background**

21     Plaintiff filed its complaint (#1 Ex. A) in the Eighth Judicial

22 District Court in Clark County, Nevada on May 27, 2010. Venture

23 removed the action (#1) to this Court on June 22, 2010. Venture

24 filed its answer (#5) on June 29, 2010. On January 26, 2011,

25 Venture filed its motion (#21) for summary judgment. Plaintiff

26 opposed (#26) and Venture replied (#31). The motion is ripe, and we

27 now rule on it.

28                             3

1

2                    **III. Summary Judgment Standard**

3          Summary judgment allows courts to avoid unnecessary trials

4   where no material factual dispute exists.  N.W. Motorcycle Ass'n v.

5   U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court

6   must view the evidence and the inferences arising therefrom in the

7   light most favorable to the nonmoving party, Bagdadi v. Nazar, 84

8   F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment

9   where no genuine issues of material fact remain in dispute and the

10  moving party is entitled to judgment as a matter of law.  FED. R.

11  CIV. P. 56(c).  Judgment as a matter of law is appropriate where

12  there is no legally sufficient evidentiary basis for a reasonable

13  jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where

14  reasonable minds could differ on the material facts at issue,

15  however, summary judgment should not be granted.  Warren v. City of

16  Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct.

17  1261 (1996).

18         The moving party bears the burden of informing the court of the

19  basis for its motion, together with evidence demonstrating the

20  absence of any genuine issue of material fact.  Celotex Corp. v.

21  Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met

22  its burden, the party opposing the motion may not rest upon mere

23  allegations or denials in the pleadings, but must set forth specific

24  facts showing that there exists a genuine issue for trial.  Anderson

25  v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Although the

26  parties may submit evidence in an inadmissible form — namely,

27  depositions, admissions, interrogatory answers, and affidavits —

28                                    4

1 only evidence which might be admissible at trial may be considered

2 by a trial court in ruling on a motion for summary judgment.  FED.

3 R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d

4 1179, 1181 (9th Cir. 1988).

5       In deciding whether to grant summary judgment, a court must

6 take three necessary steps: (i) it must determine whether a fact is

7 material; (ii) it must determine whether there exists a genuine

8 issue for the trier of fact, as determined by the documents

9 submitted to the court; and (iii) it must consider that evidence in

10 light of the appropriate standard of proof.  Anderson, 477 U.S. at

11 248.  Summary judgment is not proper if material factual issues

12 exist for trial.  B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260,

13 1264 (9th Cir. 1999).  "As to materiality, only disputes over facts

14 that might affect the outcome of the suit under the governing law

15 will properly preclude the entry of summary judgment."  Anderson,

16 477 U.S. at 248.  Disputes over irrelevant or unnecessary facts

17 should not be considered.  Id.  Where there is a complete failure of

18 proof on an essential element of the nonmoving party's case, all

19 other facts become immaterial, and the moving party is entitled to

20 judgment as a matter of law.  Celotex, 477 U.S. at 323.  Summary

21 judgment is not a disfavored procedural shortcut, but rather an

22 integral part of the federal rules as a whole.  Id.

23

24       **IV. Defendant Venture's Motion (#21) for Summary Judgment**

25       Venture asks the Court to dismiss Venture from this action in

26 its entirety with prejudice because: (i) no genuine issues of

27 material fact remain for trial; and (ii) Oakview has failed to state

28                                  5

1  a claim upon which relief may be granted because: (a) Venture does

2  not own any interest in the Project; (b) Venture did not acquire any

3  interest in or assets or liabilities of Huffman; (c) Venture is not

4  a successor in interest to the Letter Agreement; and (d) Venture did

5  not enter into any contracts with Oakview for the construction of

6  the Project.

7      Venture alleges that the sole member of Hualapai is Venture

8  Professional Centers, LLC ("VPC LLC"), a California limited

9  liability company qualified to do business in Nevada. (Mot. for

10  Summary Judgment at 4 (#21).)  Venture claims that "Venture

11  Corporation" was a "trade name/dba" filed in approximately 1980 for

12  a California corporation named Venture Development Corporation,

13  which was formed in or about 1976 and subsequently underwent a name

14  change to Tamal Mt., Inc.. (Id.)  Venture Development Corporation

15  d/b/a Venture Corporation was hired by Hualapai to act as project

16  manager and oversee the development, marketing and sale activities

17  for the Project. (Id. at 4-5.)  In this role, Venture was not a

18  party to any contracts for the construction of the Project and had

19  no control over the Project's funds. (Id. at 5.)  Venture further

20  contends that it did not purchase Huffman, any of its assets or

21  liabilities, nor did it assume or succeed to any of Huffman's

22  contract liabilities. (Id.)   Venture also did not purchase, was

23  not assigned and does not own any interest in VPC LLC.  (Id.)

24      For its part, Oakview contends that it was not aware of the

25  existence of VPC LLC until the start of the present litigation and

26  was under the impression that Venture had assumed the obligations of

27  the Letter Agreement.  (Resp. to Mot. for Summary Judgment at 3

28

6

1  (#26).)  Oakview asserts that a genuine issue of material fact

2  exists as to whether Venture had apparent authority to make payment

3  under the Letter Agreement on behalf of Robert Eves and VPC LLC, the

4  successors in interest to membership interests in Hualapai.  Oakview

5  believed that Venture had authority to perform under the Letter

6  Agreement and Venture actually caused payment to be made to Oakview

7  in accordance with the Letter Agreement. (Id. at 4.)

8      In Nevada, an agent binds a principal when it acts under

9  "actual . . . or apparent authority." See Dixon v. R.H. Thatcher,

10  742 P.2d 1029, 1031 (Nev. 1987).  Apparent authority is "that

11  authority which a principal holds his agent out as possessing[,] or

12  permits him to exercise or . . . represent himself as possessing,

13  under such circumstances as to estop the principal from denying its

14  existence."  Id.  "Apparent authority is, in essence, an application

15  of equitable estoppel, of which reasonable reliance is a necessary

16  element."  Great American Ins. Co. v. General Builders, Inc., 934

17  P.2d 257, 261 (1997).  "Apparent authority, including a third

18  party's reasonable reliance on such authority, is a question of

19  fact." Id. (emphasis in original).

20      Restatement (Second) of Agency notes that "apparent authority

21  is created when a principal writes, speaks, or acts in a way which

22  causes a third person to reasonably believe that the principal

23  consents to the acts fo the agent."  Restatement (Second) of Agency

24  § 27 (2005).  Apparent authority is created where both the third

25  party and the principal know of the actions of the agent, and the

26  principal fails to object even though it could have easily done so.

27  Id. at § 43 cmt. e.

28

7

1        Venture contends that the existence of apparent authority is

2   not material to whether Oakview alleged a viable cause of action

3   against Venture.   (Reply to Mot. for Summary Judgment at 3 (#31).)

4   We agree.   Even if Venture had the apparent authority to make

5   payments under the Letter Agreement, Venture's actions or inactions

6   as an agent with apparent authority would only be imputed to and

7   would only bind the principal, not Venture.   Tsouras v. Southwest

8   Plumbing & Heating, 587 P.2d 1321, 1323 (1978)(holding that

9   "[a]pparent authority (when in excess of actual authority) proceeds

10  on the theory of equitable estoppel: it is, in effect, an estoppel

11  against the alleged principal to deny agency when by his own conduct

12  he has clothed the agent with apparent authority to act.").   Oakview

13  offers no authority to suggest that Venture would itself be bound to

14  make payments under the Letter Agreement as an agent of Huffman with

15  apparent authority.   (Resp. to Mot. for Summary Judgment at 3

16  (#26).)   Oakview also does not assert that Venture executed any

17  contract or agreement on behalf of Huffman.   (Id.)   Rather, Oakview

18  appears to suggest that Venture was acting on behalf of either VPC

19  LLC or Robert Eves as principal, although neither party is named in

20  this lawsuit, and Venture offers no evidence that either party was

21  in privity of contract with Oakview with respect to the Contracts or

22  the Letter Agreement.   (Id. at 4.)

23        Venture correctly states that a "mistaken belief does not

24  create a genuine issue of material fact."   (Reply to Mot. for

25  Summary Judgment at 6 (#31).)   As the party opposing a motion for

26  summary judgment, Oakview has the burden of proof to offer

27  admissible evidence that Venture assumed or otherwise became

28                                    8

1 obligated to pay the remaining debt claimed by Oakview pursuant to
2 the Letter Agreement.  See Anderson v. Liberty Lobby, 477 U.S. 242,
3 250 (1986).  Here, Oakview has not offered any evidence as to how
4 Huffman's obligations under the Letter Agreement became obligations
5 of Venture.  The only evidence offered by Oakview is a series of
6 invoices sent to Venture and checks paid by Nevada Title Company to
7 Oakview as a pro rata payment from the sale of building units.
8 (Resp. to Mot. for Summary Judgment Ex. 2 (#26).)   These checks
9 identify the seller as Huffman, not Venture, and do not provide any
10 evidence that Venture had assumed the obligations of Huffman under
11 the Letter Agreement.  Oakview has, therefore, failed to present any
12 evidence to support its contention that there is a genuine issue of
13 material fact as to whether Venture assumed the obligations of the
14 Letter Agreement and so may be held liable for payments due Oakview
15 thereunder by the doctrine of apparent authority.

16

17                           **V. Conclusion**

18     Venture has moved for summary judgment on the basis that: (i)
19 no genuine issues of material fact remain for trial; and (ii)
20 Oakview has failed to state a claim upon which relief may be
21 granted.  Venture asserts that it does not own any interest in the
22 Project; (b) did not acquire any interest in or assets or
23 liabilities of Huffman; (c) is not a successor in interest to the
24 Letter Agreement; and (d) did not enter into any contracts with
25 Oakview for the construction of the Project.  For its part, Oakview
26 contends that there exists a genuine issue of material fact as to
27 whether Venture assumed the obligations of the Letter Agreement

28                               9

1  under the doctrine of apparent authority.  We have found that such

2  an issue of material fact does not exist.

3

4      **IT IS, THEREFORE, HEREBY ORDERED** that Venture's motion (#21)

5  for summary judgment is **GRANTED** and Defendant Venture is dismissed

6  from this case.

7      Judgment will not be entered until all parties and all claims

8  have been disposed of.

9

10

11 DATED: August 25, 2011.

12
                                   _____
13                                 UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        10